UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br>          Plaintiff,<br><br>v.<br><br>RDA CONSTRUCTION CORP., 35 NORTH STREET REALTY, LLC, EUGENE P. KELLEY, JR., and MARGARET KELLEY,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 13-11593-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                 September 3, 2015

### I.   Introduction

In this indemnity action, Plaintiff Great American Insurance Company ("GAIC") alleges that RDA Construction Corporation ("RDA Construction"), 35 North Street Realty, LLC, Eugene P. Kelley, Jr. and Margaret Kelley (collectively "Defendants") are liable for losses resulting from payment and performance bonds that GAIC as surety issued on Defendants' behalf. D. 1. GAIC has now moved for summary judgment. D. 46. For the reasons stated below, the Court ALLOWS GAIC's summary judgment motion.

### II.   Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless

1

Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). Establishing a genuine issue of material fact "requires more than effusive rhetoric and optimistic surmise," and "[c]onclusory allegations, improbable inferences, and unsupportable speculation" will not suffice." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (citation and internal quotation marks omitted). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences" in her favor. Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III. Factual Background**

Unless otherwise noted, the following undisputed material facts are drawn from GAIC's statement of undisputed material facts, D. 47, and Defendants' responses, D. 54-1.

GAIC issues surety bonds on behalf of contractors to secure their performance on construction projects. D. 47 ¶ 1; D. 54-1 ¶ 1. RDA Construction is a construction contractor. Id. ¶ 2; D. 54-1 ¶ 2. Eugene Kelley, Jr. is the president and sole owner of RDA Construction and Margaret Kelley is his wife. D. 55 ¶¶ 1-2 (Third Eugene Kelley Aff.). On October 14, 2008, RDA Construction and the Kelleys executed an indemnity agreement ("Indemnity Agreement")

with GAIC.  D. 47 ¶ 3; D. 54-1 ¶ 3.  On October 13, 2009, 35 North Street Realty, LLC became a party to the Indemnity Agreement.  D. 47 ¶ 4; D. 54-1 ¶ 4.

> The Indemnity Agreement provides the following indemnity obligation:
>
> [Defendants], jointly and severally, shall exonerate, indemnify, hold harmless and keep [GAIC] indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which [GAIC] may sustain and incur:  (1) By reason of being requested to execute or procure, or having executed or procured the execution of bonds on behalf of any of [Defendants], (2) By reason of the failure of [Defendants] to perform or comply with any of the covenants and condition of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement.

D. 1-1 at 2 (Indemnity Agreement).  At Defendants' request, and in reliance on the Indemnity Agreement, GAIC issued (1) Bond No. 8118563 in the amount of $7,162,524 for a waterfront improvement project for the United States Department of the Navy ("Navy") in Newport, Rhode Island ("Navy Bond") and (2) Bond No. 8118554 in the amount of $3,152,524 for a bridge reconstruction project near the Ponkapoag Trail for the Massachusetts Highway Department in Milton, Massachusetts ("Ponkapoag Bond").  D. 47 ¶ 6; D. 54-1 ¶ 6; D. 49-2 (the Navy and Ponkapoag Bonds).

On February 21, 2013, the Navy terminated RDA Construction's contract for default on the Navy project.  D. 47 ¶ 7; D. 54-1 ¶ 7; D. 49-3 (termination letters).  On the same day, the Navy also demanded that GAIC complete RDA Construction's work under the Navy Bond and asked for a response within seven days.  D. 47 ¶ 8; D. 54-1 ¶ 8; D. 49-3 at 9.  On December 20, 2013, the Navy and GAIC arranged for the completion of RDA's work through two agreements. D. 47 ¶ 9; D. 54-1 ¶ 9; D. 49-4 (the agreements).  As part of the arrangement, GAIC paid the Navy $2,774,937.24.  D. 47 ¶ 10; D. 49 ¶ 11 (Siegler Aff.); D. 49-4 at 5.

GAIC has received claims on the Navy Bond from RDA Construction's subcontractors and suppliers and it paid out $130,797.20 in claim losses, although Defendants dispute the validity of those payments.  D. 47 ¶ 13; D. 54-1 ¶ 13; D. 49 ¶ 14.  GAIC has also received claims on the Ponkapoag Bond, but it has not made any payments.  D. 47 ¶¶ 14-15; D. 54-1 ¶ 15; D. 49 ¶ 16.  GAIC asserts it continues to have exposure under the Ponkapoag Bond for a claim for $21,308.35.  Id. ¶ 16; D. 54-1 ¶ 16; D. 49 ¶ 17.  Finally, GAIC has paid $450,371.02 in costs and legal and consultant expenses as a result of issuing both bonds.  D. 65 ¶ 4 (Third Siegler Aff.).  As of July 7, 2015, GAIC's losses total $3,356,105.46.  Id. ¶ 5.

## IV. Procedural History

GAIC filed this lawsuit in July 2013.  D. 1.  In August 2013, Defendants answered and asserted counterclaims.  D. 9.  In July 2014, Defendants moved to amend their counterclaims to add additional factual allegations, D. 32, which the Court granted, D. 35.  In February 2014, GAIC moved for summary judgment on all claims and counterclaims.  D. 46.  The Court heard the parties on July 8, 2015 and took the matter under advisement.  D. 66.

## V. Discussion

### A. Defendants Cannot Show a Genuine Issue of Material Fact Exists Regarding GAIC's Good Faith

"To prevail on a claim for breach of the surety contract, [GAIC] must demonstrate (1) that the parties reached a valid and binding agreement, (2) that defendants breached a material term of the agreement, and (3) that [GAIC] suffered damages because of defendants' breach." Fid. & Guar. Ins. Co. v. Boustris, No. 08-cv-11198-RGS, 2010 WL 4183879, at *2 (D. Mass. Oct. 25, 2010) (citing Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999)).[1]  An

---

[1] Because an express indemnity provision applies, the Court analyzes GAIC's indemnity claims under the Indemnity Agreement.  See N. Am. Specialty Ins. Co. v. MPF Corp., No. 09-

indemnity agreement between a surety and its indemnitors "is not to be read with any bias in favor of the indemnitor and against the indemnitee," but "is to be interpreted like any ordinary contract, with attention to language, background, and purpose." N. Am. Specialty Ins. Co. v. MPF Corp., No. 09-cv-11122-LTS, 2010 WL 5452721, at *2 (D. Mass. Dec. 29, 2010) (citing Speers v. H.P. Hood, Inc., 22 Mass. App. Ct. 598, 600 (1986)).

"Massachusetts courts have held that a surety seeking indemnification based [upon] such an agreement is entitled to judgment as a matter of law provided that it acted in good faith in incurring the expenses for which it seeks indemnity."[2] Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 7 (1st Cir. 2008); see Constructora Andrade Gutiérrez, S.A. v. Am. Int'l Ins. Co. of Puerto Rico, 467 F.3d 38, 45-46 (1st Cir. 2006) (observing that "[g]enerally, when an indemnity agreement gives a surety broad discretion to pay claims triggering the indemnity agreement, the only defense an indemnitor may raise against a claim by the surety for indemnification is that the surety committed fraud or collusion, or otherwise acted in bad faith in paying the claim"). Defendants do not contest that the Indemnity Agreement is a valid contract, that GAIC has claimed losses under the Indemnity Agreement or that they have refused to indemnify GAIC for its losses. D. 48 at 9-13; D. 63 at 2. Thus, as both parties agreed at oral

---

11122-LTS, 2010 WL 5452721, at *2 (D. Mass. Dec. 29, 2010) (granting summary judgment for surety where surety brought indemnity, common law indemnity and breach of contract claims because there was no genuine dispute that surety acted in good faith under the indemnity agreement) and No. 09-11122-LTS, D. 1 (complaint).

[2] The parties assume that Massachusetts substantive law applies here. D. 48 at 9; D. 63 at 2. "In this situation," because there is "at least a reasonable relation between the dispute and the forum whose law has been selected by the parties," the Court "will forego an independent analysis of the choice-of-law issue and apply the state substantive law selected by the parties." Fed. Ins. Co. v. Raytheon Co., 426 F.3d 491, 496 n.2 (1st Cir. 2005) (citing Merchants Ins. Co. of New Hampshire v. U.S. Fid. & Guar. Co., 143 F.3d 5, 8 (1st Cir. 1998)) (internal quotation marks omitted).

argument, the key issue on summary judgment is whether GAIC's losses under the Indemnity Agreement were incurred in good faith.

Under Massachusetts law, "[w]ant of good faith involves more than bad judgment, negligence or insufficient zeal. It carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will." Star Equip. Corp., 541 F.3d at 7 (quoting Hartford Acc. & Indem. Co. v. Millis Roofing & Sheet Metal, Inc., 11 Mass. App. Ct. 998, 999 (1981)) (internal quotation marks omitted). When determining whether good faith exists, "the merits of the underlying dispute are not material." Id. at 7 n.2 (citing Millis Roofing, 11 Mass. App. Ct. at 999).

Here, the Indemnity Agreement provides that "the vouchers, invoices, an affidavit or other evidence of any such payments made by [GAIC] shall be prima facie evidence of the fact and amount of [Defendants'] liability to [GAIC]." D. 1-1 at 2. Under this provision, once the indemnitee has shown evidence of payment, "the burden shifts to the indemnitor to show that liability should not be imposed." U.S. Fid. & Guar. Co. v. Cobian-Guzman, 961 F. Supp. 2d 375, 381 (D.P.R. 2013); see U.S. Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 582 (M.D. Pa. 1998) (noting that in indemnity cases with *prima facie* evidence provisions, "courts have routinely held that once a surety has submitted the required documentation of payments, the burden under Rule 56 shifts to the principal to prove the existence of a genuine issue of material fact"), aff'd, 185 F.3d 864 (3d Cir. 1999); Millis Roofing, 11 Mass. App. Ct. at 999 (granting summary judgment because indemnitor failed to rebut *prima facie* evidence that the contract permitted). When "unambiguous terms" of the agreement entitle the surety to "reimbursement so long as it made the disbursements in good faith," "[m]erely establishing that Defendants had a

basis to dispute the bills . . . does not create a genuine issue of material fact." MPF Corp., 2010 WL 5452721, at *2.

>       *1.*     *GAIC's Failure to Investigate Why the Navy Terminated RDA Construction*

Defendants argue that the Navy unjustly terminated RDA Construction from the project and that GAIC incurred losses in bad faith because it failed to question the Navy's termination decision. D. 54-1 at 13; D. 63 at 3-4. RDA Construction and the Navy are currently litigating issues about the project in a separate lawsuit filed in August 2011 in the U.S. Court of Federal Claims. D. 54-1 at 32; D. 56 at 4 n.3.

The problem, however, is it is unclear why this argument bears upon whether GAIC incurred expenses under the Indemnity Agreement in bad faith. Under Massachusetts law, "broad language . . . [in] the indemnity agreement reflects an intention to provide comprehensive reimbursement to the bonding company." Millis Roofing, 11 Mass. App. Ct. at 999 (granting summary judgment on an agreement that also provided indemnitor would indemnify "against any and all liability"). Here, Defendants agreed to "exonerate, indemnify, hold harmless and keep [GAIC] indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature." D. 1-1 at 2. Defendants also agreed that GAIC "shall be entitled to charge for any and all disbursements made by [GAIC] in good faith . . . under the belief that [GAIC] is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for [GAIC] to make such disbursements, whether or not such liability, necessity or expediency existed." Id. Thus, by the Indemnity Agreement's plain language, GAIC could incur reimbursable expenses as long as it believed it faced liability or that expenses were necessary or expedient—even if the liability, necessity, or expediency did not actually exist.

Once the Navy terminated RDA Construction from the project in February 2013, the Navy immediately requested that GAIC find a replacement contractor or be liable for "excess reprocurement costs" once the Navy "reprocure[d] the services directly." D. 49-3 at 10. Facing a real possibility of liability, GAIC exercised its contractual right to incur indemnifiable expenses. Even if Defendants are correct that the Navy wrongfully terminated RDA Construction, Defendants have not shown that GAIC's response to that termination lacked good faith.

Instead, Defendants merely contend "[i]t should have been apparent to a reasonable bond investigator" that the Navy's decision was wrongful. D. 63 at 3. Yet "mere negligence or bad judgment is not enough to raise an issue of bad faith." Transamerica Premier Ins. Co. v. Electro Maint. & Serv. Corp., No. 925767, 1994 WL 879652, at *4 (Mass. Super. Mar. 31, 1994). Any failure to investigate the Navy's wrongful termination is thus immaterial to whether GAIC incurred expenses in bad faith. Star Equipment Corp., 541 F.3d at 7 n.2; Am. Employers' Ins. Co. v. Horton, 35 Mass. App. Ct. 921, 923 (1993) (granting summary judgment for the surety despite the assertion that the surety's expense of attorneys' fees lacked good faith because the surety failed to conduct an adequate investigation of the general contractor's counterclaim).

Ultimately, whether the termination was wrongful and whether GAIC's expenses in response to the termination were made in bad faith are two distinct legal issues being heard in different courts. The latter hinges on the Indemnity Agreement, while the former rests on the contractual relationship between the Navy and RDA Construction. In its case against the Navy, RDA Construction is seeking damages for termination, including any amounts payable to GAIC under the Indemnity Agreement "as damages caused by the wrongful termination." RDA Construction Corp. v. United States, 1:11-cv-00555-SGB, D. 44 ¶ 89. Accordingly, resolving

the issue of Defendants' obligation to GAIC under the Indemnity Agreement will not prejudice that dispute in the Court of Federal Claims. GAIC's claims here merely require the Court to resolve whether GAIC is entitled to indemnity in the first instance.

### 2.      *Alleged Offers by Others to Complete the Project*

Defendants also argue that GAIC lacked good faith because it overpaid to complete the project and failed to consider other contractors through a competitive bidding process. D. 63 at 18-24. Defendants assert that instead of tendering the Haskell Company's offer of a little over $4.7 million to the Navy, GAIC should have hired Cashman Equipment Construction, a company that offered to complete the project for a little over $1 million. Id. at 16. Defendants also assert that a second company, Reagan Construction, had offered to complete the project for approximately $1 million as well and is now a subcontractor on the project working at that rate. Id. at 21. For support, Defendants cite Transamerica Ins. Co. v. New Eastern Contracting, Inc., No. 920580B, 1995 WL 808700 (Mass. Super. Ct. Jan. 27, 1995) and Liberty Mut. Ins. Co. v. Integrated Pro Servs., LLC, No. 14-cv-1418, 2015 WL 3620147, at *4 (E.D. La. June 9, 2015). Id. at 18-20, 26-27. Finally, Defendants argue that GAIC's decision to forgo a competitive bidding process was a failure to mitigate damages. Id. at 21.

Defendants' reliance on Transamerica is misplaced. There, the indemnification agreement expressly included a provision that required the surety, in the event of default, to obtain bids and arrange a contract with the lowest bidder to complete the work. Transamerica, 1995 WL 808700 at *4 (noting that the agreement provided that the surety had to "[o]btain a bid or bids for completing the Contract . . . and upon determination by [surety] of the lowest responsible bidder" arrange a contract for completion of the project) (emphasis removed). Here, no such contractual obligation for competitive bidding exists. Instead, under the Indemnity

Agreement, only a broadly worded good faith standard applies, and any evidence of GAIC's payments constitutes *prima facie* evidence of Defendants' liability.  D. 1-1 at 2.

Liberty Mutual is unavailing too.  There, Louisiana law applied, and by Louisiana statute and case law, the state's good faith standard for an indemnity agreement incorporates "reasonable commercial standards of fair dealing."  Liberty Mut., 2015 WL 3620147, at *3 (citation and internal quotation mark omitted).  Under Massachusetts law, however, lack of good faith requires conduct worse than mere negligence.  Millis Roofing, 11 Mass. App. Ct. at 999.  Moreover, even if the good faith standard in Liberty Mutual was equivalent to the one that applies in this case, the case is distinguishable since the court in Liberty Mutual noted that an email exchange discussed how the municipality planned to replace the contractor with the subcontractor and how this plan would be beneficial to the surety—five months before the contractor was ultimately terminated.  2015 WL 3620147, at *4.  Here, Defendants have not advanced any evidence of possible inference of bad faith or that GAIC and the Navy had plotted out a similar plan in advance to benefit GAIC at Defendants' detriment.

Defendants' mitigation argument also does not merit a different result.  While parties to a contract are typically obligated to mitigate their damages under a reasonableness standard, Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 612 (2007) (explaining that "[a] party cannot recover damages for loss that he could have avoided by [such] reasonable efforts . . . as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise") (citation and internal quotation marks omitted), a surety under a typical indemnity agreement is governed by the good faith standard.  By law, lack of good faith is "not simply bad judgment" or "negligence" but "implies conscious doing of wrong" and "imports a dishonest purpose or some moral obliquity."  MPF Corp., 2010 WL 5452721, at

\*3 (quoting <u>Bank of America, N.A. v. Prestige Imports</u>, 75 Mass. App. Ct. 741, 754 (2009)). Accordingly, courts have recognized that a surety's failure to mitigate or minimize losses is no defense against an indemnity claim where the indemnity contract permits the surety to recover for payments made in good faith. See, e.g., <u>American States Ins. Co. v. Glover</u>, 960 F.2d 149 (table), 1992 WL 78786, \*4-5 (6th Cir. Apr. 16, 1992) (noting that surety's failure to mitigate losses is not a defense to an indemnity action where indemnity contract permitted surety to recover for payments made in good faith); <u>Engbrock v. Fed. Ins. Co.</u>, 370 F.2d 784, 787 (5th Cir. 1967) (affirming judgment for surety despite indemnitor's argument that surety "did not do what it should have done in order to limit or minimize the costs"); <u>Fireman's Fund Ins. Co. v. Nizdil</u>, 709 F. Supp. 975, 976-77 (D. Or. 1989) (granting summary judgment despite allegation that sureties overpaid the claim).

Defendants' reliance upon certain factual allegations regarding lower bids also does not defeat the motion for summary judgment. First, although Cashman Equipment Corporation at one point offered a $1 million bid, the company withdrew the offer in May 2013 after visiting the project site and realizing that its bid did not reflect the work required. D. 56 at 10-12; D. 56-4 at 2 (Cashman's withdrawal letter). That is, there is no genuine issue of material fact as to this contention since the offer was withdrawn and does not support the mitigation argument.

Second, Defendants' information about Reagan Construction's alleged bid is hearsay, speculative, or both. Defendant Eugene Kelley claims he learned from Reagan or from a third party that Reagan was "preparing a bid to Haskell to perform most of [RDA Construction's] remaining work" for around $1 million. D. 63 at 11 (citing D. 32-2 ¶ 42); D. 32-2 ¶ 15 (stating that "based on . . . my conversation with John McNulty, Chief Estimator at CEC, regarding his knowledge that Reagan Construction had submitted a price of $1 [million]"). He also claims "on

11

information and belief" that Reagan Construction is being paid "just below $1 million" as a subcontractor on the project now. D. 63 at 8. Neither allegation is capable of defeating a motion for summary judgment. Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011) (explaining "'[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted" and that "[a] genuine issue of material fact can be created only by materials of evidentiary quality") (citations omitted); Travelers Cas. & Sur. Co. of Am. v. Jadum Const., Inc., No. 02-cv-10581-GAO, 2003 WL 21653368, at *2 (D. Mass. July 11, 2003) (holding that "bald assertions" on "information and belief" could not overcome surety's motion for summary judgment).

Even if these other offers actually existed and could be considered, Defendants would still not defeat summary judgment. "[O]verpayment by itself does not evince any ill will" by the surety. Jadum Const., Inc., 2003 WL 21653368, at *2; see Developers Sur. & Indem. Co. v. Northeast Financial Mgmt. Corp., 2011 WL 4424065, at *4 (Mass. Super. Aug. 16, 2011) (granting summary judgment for surety even assuming that indemnitors could have completed the project for less because the "unambiguous language" of the indemnity agreement allowed the surety to incur expenses "as it shall deem necessary"). Defendants have offered no evidence to suggest that GAIC deliberately sought to incur needless expenses. The record suggests that GAIC decided to tender Haskell as the replacement contractor because the Navy agreed to significant financial incentives. D. 56 at 7. The Navy agreed to cut some of the remaining work but chose not to reduce the budget, freeing approximately $1 million to complete the project. Id. at 8.

    *3.*  *GAIC's Self-Interest*

Finally, Defendants argue that a genuine issue of material fact on bad faith exists because GAIC acted out of self-interest in structuring its agreements with the Navy. First, Defendants argue that GAIC's decision to structure one of its agreements as a tender agreement shows a lack of good faith because the agreement limited GAIC's total losses to the penal sum of the bond. D. 63 at 22. This argument ignores that GAIC's desire to limit its total exposure under the Indemnity Agreement aligned with Defendants' interests. Every dollar that GAIC took off the table was a dollar it could not claim under the Indemnity Agreement from Defendants.

Second, Defendants fault GAIC over the Navy's claim to liquidated damages. D. 63 at 24. GAIC allegedly acted in bad faith because the Navy agreed to waive its claim against GAIC yet continues to seek liquidated damages against Defendants. Id. at 24. Had the Navy refused to waive its claim against GAIC, liquidated damages would currently exceed $3.1 million, D. 56 at 9-10, and, as GAIC's counsel indicated at oral argument, GAIC would have sought indemnity from Defendants for that amount. Instead, the Navy is currently seeking approximately $2.2 million against RDA Construction. D. 57-2 at 1. If Defendants are suggesting that, either GAIC could have resolved all of the Navy's claims for liquidated damages against GAIC and Defendants or that, but for the Navy's waiver of liquidated damages against GAIC, the Navy would not still be seeking liquidated damages from Defendants, there appears to be no evidence of either in this record.

GAIC may have acted with "bad judgment, negligence or insufficient zeal." Star Equipment Corp., 541 F.3d at 7. But under Massachusetts law and the parties' broad Indemnity Agreement, any such conduct cannot defeat summary judgment. See, e.g., MPF Corp., 2010 WL 5452721, at *3 (granting summary judgment for surety because indemnitor's affidavit lacked probative evidence on the issue of good faith); Boustris, 2010 WL 4183879, at *2 (granting

summary judgment for surety because indemnitors signed the agreement and the surety demanded payment and incurred losses); Jadum, 2003 WL 21653368, at *2 (granting summary judgment for surety because "sizeable costs" incurred over original contract price alone does not raise a genuine issue for dispute); Seaboard Sur. Co. v. Interstate Constr. Co., Inc., No. 013735, 2003 WL 22049500, at *5 (Mass. Super. Ct. July 15, 2003) (granting summary judgment for surety because nothing demonstrated any implication of a dishonest purpose); Electro Maintenance, 1994 WL 879652, at *4 (granting summary judgment for surety because "[t]he fact that [surety] settled the claims for more than [the individual indemnitor] believes it would have cost [the indemnitor company] to complete the construction projects might indicate" bad judgment or negligence, but not bad faith).

### B. The Court Grants Summary Judgment on GAIC's Specific Performance, Quia Timet and Exoneration Claims

GAIC also requests that the Court enforce Defendants' obligation to deposit collateral under the Indemnity Agreement. D. 48 at 19 (requesting summary judgment to all counts); D. 1 ¶¶ 40-47 (Count IV Specific Performance – Collateral).

The Indemnity Agreement provides that "[p]ayment . . . shall be made to [GAIC] by [Defendants], upon demand by [GAIC], as soon as liability exists or is asserted against [GAIC], whether or not [GAIC] shall have made any payment therefor." D. 1-1 at 2. It further provides that "[t]he amount of such payment . . . shall be determined by [GAIC] and [GAIC's] demand for payment hereunder may, at [GAIC's] option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited." Id. GAIC's demand "shall be sufficient if sent by registered or certified mail, and Defendants "acknowledge that the failure of the Undersigned to deposit with [GAIC], immediately upon demand, the sum demanded by [GAIC] as payment shall cause irreparable harm to the Surety for which the Surety has no

adequate remedy at law." Id. Finally, Defendants "agree that [GAIC] shall be entitled to injunctive relief for specific performance of any or all of the obligations of [Defendants] under this Agreement including the obligation to pay to [GAIC] the sum demanded." Id.

On April 2, 2013, GAIC demanded $2.715 million from Defendants by certified mail. D. 47 ¶ 25; D. 54-1 ¶ 25; D. 49-5 at 2. Defendants did not pay, and they now argue that they refused because GAIC's expenses were not made in good faith. D. 47 ¶ 26; D. 54-1 ¶ 26. On January 17, 2014, GAIC demanded $3,049,467.04. D. 47 ¶ 27; D. 54-1 ¶ 27; D. 49-5 at 5. Defendants again declined to pay for the same reason. D. 47 ¶ 26; D. 54-1 ¶ 26.

"Collateral security provisions provide that once a surety receives a demand on its bond, the indemnitor must provide the surety with funds which [it will] . . . hold in reserve." U.S. Fid. & Guar. Co. v. Diaz Matos, No. 05-cv-1851-PG, 2007 WL 878571, at *7 (D.P.R. Mar. 21, 2007) (citing Safeco Ins. Co. of America v. Schwab, 739 F.2d 431, 433 (9th Cir. 1984)) (internal quotation marks omitted). "It is well settled that a surety may sue for specific performance for deposit of security to cover the surety's reserve if such a provision is found in the indemnity agreement." Employers Ins. of Wausau v. Bond, No. 90-cv-1139-JRH, 1991 WL 8431, at *3 (D. Md. Jan. 25, 1991). "[C]ollateral security clauses have routinely been upheld." Feibus, 15 F. Supp. 2d at 588. "If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." Safeco, 739 F.2d at 433 (quoting Marine Midland Trust Co. v. Alleghany Corp., 28 F. Supp. 680, 683–84 (S.D.N.Y. 1939)) (internal quotation marks omitted); see W. Sur. Co. v. Mooney Const., Inc., 574 F. App'x 865, 867 (11th Cir. 2014) (affirming summary judgment for surety in which the court ordered indemnitor to post collateral); Seaboard, 2003 WL 22049500, at *6 (Mass. Super. July 15, 2003) (enforcing provision and requiring indemnitors to make collateral deposit). Because the

Indemnity Agreement contains an unambiguous collateral security provision, the Court grants, in light of its ruling today, GAIC's request that Defendants set aside $1,150,500 as collateral for GAIC's ongoing losses, costs and expenses. D. 65 ¶¶ 7-9.

GAIC also seeks summary judgment on its quia temet and exoneration claim. D. 48 at 19 (requesting summary judgment to all counts); D. 1 ¶¶ 48-51 (Count V quia timet/exoneration – against RDA Construction only). "Quia timet and exoneration are time-honored and closely related equitable remedies commonly invoked in the surety industry." U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 49 n.4 (1st Cir. 2009). "Quia timet is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." Diaz Matos, 2007 WL 878571, at *5 (quoting Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 934 F.2d 30, 32 (2nd. Cir. 1991)) (internal quotation marks omitted). "Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor." Id. (citing Borey, 934 F.2d at 32) (internal quotation marks omitted).

GAIC's equitable claims for quia timet and exoneration mirror its request to enforce the collateral security provision and its request for money damages under the Indemnity Agreement, respectively. The Court grants summary judgment on these claims too.

### C. The Court Grants Summary Judgment for GAIC on Defendants' Counterclaims

Defendants have asserted five counterclaims against GAIC: (1) failure to mitigate damages; (2) bad faith; (3) breach of contract; (4) negligent takeover and (5) breach of covenant of good faith and fair dealing. D. 32-1 at 11-15. GAIC argues it is entitled to summary

judgment on these counterclaims because they "are merely a mirror to GAIC's indemnity claim" and are not true counterclaims but affirmative defenses in disguise. D. 56 at 14.

At their core, all five counterclaims rehash Defendants' arguments against indemnifying GAIC and allege that GAIC acted in bad faith. For Defendants' first counterclaim, GAIC allegedly failed to mitigate damages because GAIC "did not competitively bid the completion work." D. 32-1 ¶ 32. For Defendants' second counterclaim, GAIC allegedly acted in bad faith because it "acted in its own interest" in tendering Haskell to the Navy and "accept[ed] an unreasonable price to finish the work without a diligent search for other bidders." Id. ¶¶ 38, 40. For Defendants' third counterclaim, GAIC allegedly breached the Indemnity Agreement because it "did not entertain bids from other contractors for the completion contract." Id. ¶ 52. For Defendants' fourth counterclaim, GAIC allegedly was negligent because it "conced[ed] to the [Navy's] unreasonable demands" and "fail[ed] to promote competition for the completion work." Id. ¶ 60. For Defendants' last counterclaim, GAIC allegedly breached the covenant of good faith and fair dealing by "not acting in good faith, failing to undertake a reasonable investigation," and "failing to solicit bids from other contractors." Id. ¶ 65. Because the Court concludes that no genuine issue of material fact exists, including whether negligence or a failure to engage in competitive bidding constitutes a lack of bad faith, these allegations, whether as counterclaims or affirmative defenses, fail as a matter of law.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Plaintiff's motion for summary judgment. D. 46.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

17